Curia., per Harper, Ch.
There are some material circumstances, which certainly have appeared in the case from the beginning, which yet seem not to have been distinctly brought to the view of the court below, nor to have been relied on .in the cause. These are, first, that the mortgage was executed in 1788, before the passing of the act of 1791, changing the character of mortgages ; and, second, that judgments on the bonds, the satisfaction of which is now claimed, were obtained against Dr. Chandler himself, in his lifetime. The mortgage being executed before the stat *384 ute could not come within its provisions. Indeed, the act itself expressly declares that it shall not extend “ to deprive any person or persons, of any right which he, she, or they, may have at the time of the passing of this act.” It follows, that by the execution of the mortgage, the legal title of the property was vested in the mortgagees, (the complainants,) and upon its being forfeited in 1789, they might have maintained their action for the recovery of possession. The time then required to mature a title, by the statute of limitations, had run out more than five times befoi'e the filing of the bill. It is supposed, however, that the statute of limitations cannot avail the defendants, because their possession was not adverse. I shall first consider the case upon the supposition that the defendants are in possession, as the heirs of Dr. Chandler, and stand in all respects in his situation. It is supposed that the possession of the mortgagor, even after forfeiture, cannot be regarded as adverse, so as to bar the mortgagees title, while the debt which it was given to secure still subsists, and if that be kept alive, as by the paj ment of interest, or any other mode of recognition, the mortgage must be preserved also.
Some ambiguity has been, perhaps, occasioned in the English cases, by the circumstance that the time required to raise the presumption of payment of a bond, and to acquire a title to land, under the statute, 21. Jas. I., is the same. The question is there commonly regarded as identical, whether the debt shall be presumed to be paid or the mortgage to be discharged. I have no doubt, but that if there were no more than this, that after forfeiture the mortgagor in possession continued to pay interest, for more than twenty years, or should otherwise acknowledge the debt, this would be a recognition of the mortgagees right in the land; the possession would not be presumed adverse. This is the case of Fletcher v. Pineaux, 1 Ld. Raymond. 746. But undoubtedly the mortgagor might make it adverse; suppose him to give explicit notice to the mortgagee, that though he acknowledged the debt, he claimed to hold the land discharged of the mortgage, can any definition of adverse possession be imagined which would not include this — the party in possession, claiming in his own right, denying the right of him who afterwards seeks to set it up, *385 and the latter being under no disability to hinder his proceeding at law. It comes within the very letter and the very spirit of the statute. I have said elsewhere, what has been approved by the* court, “ it is believed that no case can be put, in which a man knows that another claims and is in the enjoyment of what belongs to him, and neglects to pursue his claims at law, where there is nothing to prevent his doing so, that he will not be barred by the statute.” The defendants seem to me to have done an act equivalent to the one I have supposed, when they refused to quit possession upon the notice given in 1808. The obvious inference is, that they set up a claim in their own right. There are other acts equally unequivocal, and, indeed, the chancellor reports that from the death of Dr. Chandler, the defendants have “ remained in possession of the premises and have continued there ever since, ini defiance of complainants, manifesting by every possible means,! during all that period, a determination to hold in their own right, I in opposition to the claims of complainants. The circumstance that the mortgage was executed before the act, and consequently, that the fee was in the mortgagees, who might sue for possession after forfeiture, takes the case entirely out of the reason of the cases of Thayer v. Cramer, 1 M’Cord. Ch. 395, and Smith & Cuttino v. Osborne, 1 Hill. Ch. 212. These cases go upon the ground that the fee remains in the mortgagor; that the mortgagee can bring no action at law; that the mortgagor is therefore a trustee for the mortgagee, and a purchaser from him with notice, also a trustee, whose possession cannot' be regarded as adverse, and in whose favor the statute cannot run. Indeed, I do not perceive how these cases can be reconciled with the decision in Durand v. Isaacs, 4 M’Cord. 54, and in Stoney v. Shultz, 1 Hill. Ch. 498, determining that where the mortgagor is out of possession, the act has no operation at all, but the mortgage .remains in every respect as at common law; that is to say, that by alienating the land and transferring the possession, the legal title becomes vested in the mortgagee, who may forthwith bring his action at law, if the mortgage be forfeited. If the bill could be sustained against the defendants, I should think the executor of Dr. Chandler, a necessary party to it, though it is said in the case reported in the note *386 to Knight v. Knight, 3 Pr. Wms. 333, that where the bill is for foreclosure, the executor is not a necessary party. This is because the bill for foreclosure merely, in the strict sense of the word, 1 is to quiet the mortgagees title to the land, with which the executor has nothing to do. According to our practice, the bill is not for foreclosure merely, but to obtain payment of the debt; that the land may be sold, and that the mortgagee may have execution for the residue, if the land should prove insufficient to satisfy the debt. The personal estate is first liable to the debt, and the executor is bound to pay it if he have sufficient assets. It seems to come within the principal case of Knight v. Knight, in which the executor was held a necessary party, where the bill was against the heir on a covenant of his ancestor.
Another view has been taken of the case. This has been supposed to be a suit on a bond against the heir, in respect of real assets descended, and that the assets carinot be exempted from liability until the debt itself is barred by the peesumption arising from the lapse of time. This leaves out of consideration the existence of the mortgage. But this, it seems to me, is what we cannot leave out of view. What were the real assets which descended in the present case ? Certainly not the fee of the land. That was in the complainants, the mortgagees. The heirs took nothing but the equity of redemption. Is it to make the equity of redemption liable, as distinguished from the land itself, that the bill is brought ? But if by the statute, defendants have acquired a title to the fee, they can of course have no right of redemption as against themselves. This must be merged or extinguished in the fee.
There is another ground on which we should probably arrive at the same conclusion. At common law, land was not liable to execution in the hands of the specialty debtor himself, though it was liable in the hands of the heir as assets ■ descended. But when judgment was obtained against the ancestor in his lifetime, the land was no longer liable in the hands of the heir. No action could be brought against him on the judgment, and he was regarded, not as heir, but merely as tenant of the land. By the statute of Westminster, the remedy by elegit was given against the land *387 in the hands of the judgment debtor, and after the statute, it was held that a scire facias lay against the heir, to show cause why a moiety of the lands should not be extended. The cases are referred to in n. 4 to 2. Saund. 7. where it is said that the judgment creditor cannot have execution for more than a moiety, “for it is held that the heir is chargable as tenant of the land, and not as heir, and that an action of debt does not lie against him on the judgment or recognizance.” And in Stileman v. Ashdown, 2 Atk. 608, the question was, whether a judgment creditor should have the whole land sold ? Lord Hardwicke said the judgment affects the land only as it is bound by the judgment, and equity follows the law. There was no scire facias against the heir before the statute of Westm., and it lies against him only as terre tenant, and by virtue of the statute. By the statute, 5 George II., lands are made liable to all debts in the same manner as they are liable in England, to specialty debts, and the whole land may be seized and sold under execution against the judgment debtor. It would seem to follow from analogy to the English doctrine, that upon the death of the judgment debtor, a scire facias will lie to show cause why the whole land should not be sold. According to our decisions, however, a scire facias is not necessary, but the land in the hands of the heir may be at once seized and sold under execution. But if he is in possession not as heir, but only as terre tenant, if the land be bound in his hands only as it would be bound by the judgment in the hands of any other tenant or holder, it seems to follow from the decisions in Smith v. M’Ra, arid Chollete v. Hart, that the statute of limitations will operate to bar the lien of the judgment. The possession of the heir seems to be adverse, for he claims in his own right, and according to the English doctrine the executor alone is the debtor; and some absurd and mischievous consequences would follow from a contrary determination.— Suppose the executor to make payments on the judgment, or admissions, so as to keep it alive for more than twenty years, is the land to remain indefinitely bound' in the hands of the heir ? What is the privity between the heir and executor, and on what principle is it that the acts and admissions of the latter are evidence, and conclusive evidence against the former ?
*388 It is true that it has been determined (unfortunately, I think,) that the land in the hands of the heir may be seized and sold under a judgment against the executor himself, when the heir has had no opportunity of being heard, or making defence. These decisions are too well settled, and too many rights have vested under them to permit their being questioned. But such is not the present case, and I do not feel disposed to follow them a step further, than they necessarily lead.
It is ordered and decreed, that the decree of Chancellor Johnson be reversed and the bill dismissed.
Johnston, Ch., Gantt, Beteek, Evans and Eaule, Justices, concurred.
Chancellor Dunkin, having been of counsel in the case, gave no opinion.